# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| TRUE LD LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 05-1159-CV-W-FJG |
| | ) |
| SOUTHWEST COMMUNICATIONS, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER

Currently pending before the Court is plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. # 5).

### I. Background

Defendant Southwest Communications and a third party, Global Access LD, LLC entered into a Telecommunications Service Agreement on March 12, 2004. The Agreement provided that Southwest Communications ("Southwest") would make certain Global Crossing telecommunications and data services available for resale by Global Access. True LD ("True") was not a party to this Service Agreement. The Service Agreement contained an arbitration provision. During the term of the Agreement, a billing dispute arose between Southwest and Global Access. On May 26, 2005, Southwest initiated a demand for arbitration against both Global Access and True with the American Arbitration Association. Southwest's arbitration demand was amended on October 18, 2005. Southwest alleged in its arbitration demand that True should be included in the arbitration proceedings because even though it did not sign the Agreement, it is the alter ego and/or successor in interest to Global Access. Southwest

also alleged that True accepted responsibility for making payments under the Agreement and finally argued that True was responsible under the theory of quantum meruit.

True argues that it should not be required to arbitrate this dispute because it is not a signatory to the Service Agreement, it is not a successor in interest nor is it the alter ego of Global Access. True argues that it does not own or control Global Access, it is a separate corporate entity, it maintains separate corporate offices, records and bank accounts. Thus, in the absence of an alter ego showing, True argues that it cannot be compelled to arbitrate claims that it is not a party to.

## II. Discussion

**A. Standard for Granting a Temporary Restraining Order**

"In determining a litigant's right to preliminary injunctive relief the Court considers four factors: (1) the threat of irreparable injury to the plaintiff; (2) the balance of harm to the plaintiff if relief is not granted and harm to the defendant if an injunction is issued; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest." Medtronic, Inc. v. ETEX Corp., No. Civ. 04-1355 ADM/AJB, 2004 WL 768945 (D.Minn. Apr. 12, 2004) citing Dataphase Systems. Inc. v. C.L. Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981). This is the same standard that applies when a court considers whether a temporary restraining order should be issued. S.B. McLaughlin & Co. Ltd. v. Tudor Oaks Condominium Project, ABIO, 877 F.2d 707, 708 (8th Cir. 1989).

**1. Threat of Irreparable Harm**

True argues that the threat of irreparable harm is imminent and real as the arbitration is currently scheduled for December 1, 2005. True states that a preliminary injunction is appropriate when a court determines the inapplicability of an arbitration provision. True also argues that it will suffer harm in the form of attorneys' fees and other expenses if it is forced to comply with burdensome discovery requests and to participate in the December 1, 2005 arbitration hearing.

Southwest does not address this factor, but instead focuses on True's likelihood of success on the merits.

**2. Likelihood of Success on the Merits**

True states that it is likely to succeed on the merits because it did not sign the Service Agreement and it has not at any time consented to arbitration. True notes that there are five theories under which an unwilling non-signatory can be compelled to arbitrate: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter-ego; and 5) estoppel." Thomson-CSF, S.A. v. Am. Arbitration Ass'n., 64 F.3d 773, 776 (2d Cir. 1995). True states that it is unlikely that Southwest will be able to show that it was the alter-ego or successor in interest to Global Access because it does not own or control Global Access, it has not acquired any assets from Global Access, it is a separate corporate entity from Global Access, they maintain separate corporate offices, records and bank accounts. Thus, in the absence of any evidence showing that it was the alter-ego of Global Access, True states that cannot be compelled to arbitrate claims relating to agreements it was not a party to.

In opposition, Southwest argues that True should be held to the mandatory arbitration clause based on the doctrines of assumption, estoppel and veil-piercing/alter-

3

ego. Southwest states that under the doctrine of assumption, "a non-signatory may be bound by an arbitration clause if its subsequent conduct indicates that it is assuming the obligation to arbitrate." (Southwest's Suggestions in Opposition, p. 5). Southwest states that for the five and one-half months after the arbitration demand was filed True, through its counsel, participated in and consented to being a party to the arbitration proceeding. Southwest states that True filed an answering statement, assisted in selecting the arbitrator, elected to voluntarily participate in the expedited program, participated in all preliminary hearings with the arbitrator for the setting of pre-hearing deadlines and the hearing date and also filed preliminary witness and exhibit lists.

Southwest also argues that True is bound to the arbitration clause by the doctrine of estoppel because True knowingly accepted the benefits of an agreement with an arbitration clause. Therefore, Southwest argues that even though True did not sign the Agreement is it bound by the arbitration clause. Finally, Southwest argues that True is also bound because it is the alter-ego of Global Access. As evidence in support of this claim, Southwest states that Global Access and True are both Utah LLC's with the same managing member, registered agent and organizer, they both operate out of the same business address in Sandy, Utah, Global never possessed a valid Filer ID number as required by the FCC, Global never utilized any of the services provided by Southwest, but merely passed all of them on to True, Global's only customer was True, and True, rather than Global paid for the telecommunications services.

In reply, True argues that it did not waive its objection to the arbitration and participated in only a minimal manner by filing two pleadings and that it took no affirmative action in the arbitration. True also states that its original attorney objected to

the arbitration and stated that it was "never a party to the agreement and denies assuming any responsibilities under the agreement." (Ex.1 to True's Reply, at pg. 2). True also states that in its Affirmative Defenses, it raised the failure to state a claim as a defense.

After reviewing the arguments presented by defendant, the Court finds that it is not at all clear that True would likely succeed on the merits. Southwest has raised several arguments indicating that True can be forced to arbitrate this dispute. Therefore, the Court finds that this factor weighs against granting the temporary restraining order.

### 3. Balance of Equities

True argues that if the arbitration is enjoined, there will be only a slight delay while the Court makes a determination whether True is a proper party. If the Court ultimately determines that True is a proper party then Southwest can pursue its claims. However, if the arbitration is not enjoined, True argues that it will suffer the harm described above. After reviewing the briefs the Court finds that the balance of equities lies with Southwest. They have a dispute which is the subject of an Arbitration proceeding, the Arbitration has been pending since May 26, 2005 and they are entitled to a decision on the merits of their dispute. In contrast, True has simply not shown that it is likely that it will prevail on the merits. Therefore, the Court finds that this factor weighs in favor of denying the motion for temporary restraining order.

### 4. The Public Interest

True argues that the public has a strong interest in preserving the contractual

5

right for parties to agree to arbitrate their disputes and the public also has an interest in seeing that only parties who agree to arbitrate are brought into arbitration proceedings.

However, it is also true that there is a strong public interest in allowing parties to quickly and expeditiously resolve disputes that fall within arbitration provisions. Thus, the Court finds that this factor is neutral.

### III. Conclusion

After consideration of the above noted factors, the Court does not find that issuance of a temporary restraining order in the instant case is warranted. Accordingly, plaintiff's motion for issuance of a temporary restraining order (Doc. # 5) is hereby **DENIED.**

Date: <u>November 28, 2005</u>　　　　　　　　/S/ **FERNANDO J. GAITAN, JR.**
Kansas City, Missouri　　　　　　　　　　　Fernando J. Gaitan Jr.
　　　　　　　　　　　　　　　　　　　　　United States District Judge